```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
PILGRIM CATHEDRAL OF HARLEM INC.,           :
                                            :
                 Plaintiff,                 :
                                            :
       -v-                                  :        24-cv-8804 (LJL)
                                            :
HARLEYSVILLE WORCESTER INSURANCE            :        MEMORANDUM AND
COMPANY,                                    :            ORDER
                                            :
                 Defendant.                 :
---------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/29/2025

LEWIS J. LIMAN, United States District Judge:

This case concerns an attempt by Pilgrim Cathedral of Harlem, Inc. ("Plaintiff") to obtain monies from Harleysville Worcester Insurance Company ("Defendant"), its insurer, to cover damages caused by a burst pipe. The parties previously turned to two appraisers to resolve a dispute as to the value of the loss caused by the burst pipe and now turn to the Court to resolve a dispute as to how to read the award issued by the appraisers. Defendant seeks to return the matter to the appraisers and moves for an order compelling an appraisal and staying this litigation. Dkt. No. 20. Plaintiff opposes the motion. Dkt. No. 24.

For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

Plaintiff is a domestic religious corporation organized and existing under the laws of the State of New York. Dkt. No. 1-1 ¶ 1. During all relevant times, Plaintiff owned a property located at 15 West 126 Street, New York, New York 10027 (the "Subject Property"). *Id.* ¶ 6. Defendant is a licensed insurance carrier within the State of New York. *Id.* ¶ 3.

Defendant issued to Plaintiff insurance policy MPA00000063095U (the "Policy"), which provided insurance coverage for direct physical loss of, or damage to, the Subject Property against

all risks of loss, with the exception of those specifically excluded or otherwise limited. *Id.* ¶ 12; Dkt. No. 22-1. Plaintiff is the Named Insured within the Subject Policy. Dkt. No. 1-1 ¶ 9; Dkt. No. 22-1 at 18[1]. The Policy provides coverage for the Policy Period from December 1, 2022, to December 1, 2023. Dkt. No. 1-1 ¶ 11; Dkt. No. 22-1 at 18. The deductible is listed as $1,000. Dkt. No. 22-1 at 28. The Policy's Loss Condition provision provides for an appraisal if the parties disagree on the value of a loss. Dkt. No. 1-1 ¶ 19; Dkt. No. 22-1 at 93. The provision states, in pertinent part:

> If we and you disagree on the value of the property, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.
> . . .
> The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Dkt. No. 22-1 at 104.

On or around February 6, 2023, while the Policy was in full force and effect, the Subject Property was extensively damaged by a plumbing pipe that froze, burst, and caused water damage (the "Loss"). Dkt. No. 1-1 ¶ 14. Plaintiff timely submitted an insurance claim to Defendant seeking to be indemnified for the full amount of covered damages afforded by the Policy. *Id.* ¶ 15. In response, Defendant opened claim number 254709-GO (the "Claim"). *Id.* ¶ 16.

During the course of Defendant's adjustment of the Claim, a dispute as to the value of the Loss arose between Plaintiff and Defendant. *Id.* ¶ 17. Accordingly, Plaintiff submitted a formal

---

[1] ECF pagination.

written demand for an appraisal of the Loss. *Id.* ¶ 18. On or about October 31, 2023, Defendant partially denied Plaintiff's Claim but agreed to proceed with an Appraisal for the covered portion of the Loss. *Id.* ¶ 20. Andrew Utschig ("Utschig") was appointed as the appraiser for Plaintiff and Jeff Canfield ("Canfield") was appointed as the appraiser for Defendant. *Id.* ¶ 21.

On or about February 13, 2024, an Appraisal of Insurance Claim Award Form ("Appraisal Award") was issued jointly by Utschig and Canfield. *Id.* ¶ 22. The relevant portion of the Appraisal of Insurance Claim Award Form reads as follows:

> **To the above named parties of interest:**
>
> We the undersigned appraisals have investigated and considered all of the material facts and available information pertaining to the claim. We have decided on an Appraisal Award as described below:
>
> **Dwelling Loss:**
>
> |    | **Replacement Cost Loss** | **Depreciation** | **Actual Cash** |
> |---|---|---|---|
> | 1. Dwelling | $572,136.38 | $51,492.27 | $520,644.11 |
> | 2. Mitigation/Drying |  |  | $173,378.62 |
>
> …
>
> The award of the appraisal panel is confidential and exempt from deposition or suit in case the award is challenged or a bad faith claim is filed. The appraisal award is subject to all of the terms, conditions, provisions or exclusions of the above policy of insurance, and the laws of the State of New York.
>
> And we do hereby award the foregoing sums as our appraisal award. The above award reflects the agreed damages and costs associated with all damages claimed for the dwelling claim. The amounts are subject to deduction for any previous payments and deductibles.
>
> This appraisal award shall be valid and binding upon all parties concerned if at least two of the three panel members concur in a decision, as evidenced by their signatures below.

Dkt. No. 23-1.

Beneath the words "We agree to the above," the form has signature lines for Canfield, Utschig, and "Umpire." *Id.* It contains a signature for Canfield dated February 13, 2024, and a signature for Utschig dated February 9, 2024. *Id.* The signature line for "Umpire" is blank. *Id.*

On March 1, 2024, Defendant remitted a check to Plaintiff in the amount of $173,378.62, and on March 14, 2024, it remitted a second check to Plaintiff in the amount of $346,265.49, totaling the $520,644.11 Actual Cash Value ("ACV") award on the line for "Dwelling" less the policy deductible of $1,000. Dkt. No. 1-1 ¶¶ 27–29. Defendant did not remit any separate sums for the mitigation/drying damages of $173,378.62.

On March 19, 2024, Plaintiff's Public Adjuster advised Defendant of what Plaintiff claimed was a shortfall between Defendant's payments and the ACV stated in the Appraisal Award and demanded that the balance of the ACV be paid. *Id.* ¶ 30. Defendant rejected Plaintiff's demand on or about May 16, 2024. *Id.* ¶ 32. Plaintiff's Public Adjuster requested that Defendant reconsider its position on or about May 21, 2024, but Defendant refused to do so. *Id.* ¶¶ 33–34.

Defendant reads the Appraisal Award to award a total of $520,644.11, construing the $173,378.62 for "Mitigation/Drying" as a line item included within the $520,644.11 total. Dkt. No. 13 ¶ 29. Plaintiff reads the Appraisal Award to award a total of $694,022.73, construing the $173,378.62 for "Mitigation/Drying" to be an additional component of the award on top of the portion of the award that represents the cost to replace the other damage to the dwelling. Dkt. No. 1-1 ¶ 25.

Defendant's reading is based in large part upon the declaration submitted by its appraiser, Canfield, dated March 13, 2025. Dkt. No. 22-2 ("Canfield Declaration"). In it, Canfield states that he originally estimated the total replacement cost value of the claim to be $571,447.42, including $234,186.49 in mitigation, drying, and demolition expenses. *Id.* ¶ 3. He met and

4

conferred with Utschig and he understood Utschig to largely agree with Canfield's estimate. *Id.* ¶ 5. Together they drafted an award based on a total replacement cost value of $572,136.38 and, once depreciation was accounted for, an actual cash value total of $520,644.11 in total. *Id.* ¶¶ 4–6. According to Canfield, after he and Utschig reached an apparent agreement, Utschig indicated that Plaintiff's Public Adjuster had requested that the appraisal separately break out the amount of mitigation/drying expenses. *Id.* ¶ 7. The appraisers therefore indicated the $173,378.62 figure for mitigation/drying. *Id.* ¶ 8. Canfield avers that he "understood this amount to be a line-item of the total (that is, a subset), and did not understand this line-item to be in addition to the total amount to which the appraisers had already agreed." *Id.* He states that "[t]his understanding aligned with my estimates and my review of the other appraiser's estimates, which also encompassed a similar total despite mitigation and demolition costs being included." *Id.* ¶ 10.

## PROCEDURAL HISTORY

Plaintiff instituted this action by summons and complaint filed in New York State Supreme Court, New York County, on October 9, 2024. Dkt. No. 1 ¶ 1; Dkt. No. 1-1. Plaintiff asserts a single cause of action for breach of contract and breach of the covenant of good faith and fair dealing for failure to pay monies owed pursuant to the Policy. Dkt. No. 1-1 ¶¶ 36–54. Plaintiff served Defendant with the summons and complaint through the New York Department of Financial Services on October 18, 2024, and the summons and complaint were received on October 22, 2024. Dkt. No. 1 ¶ 5. On November 19, 2024, Defendant removed the case to this Court on the basis of diversity jurisdiction. Dkt. No. 1.

Defendant answered the complaint on December 19, 2024. Dkt. No. 13. It admitted that after receiving the Appraisal Award it issued two checks totaling $519,644.11 to Plaintiff, but it claims that such sum is the proper amount due under the Appraisal Award. *Id.* ¶ 29.

5

On March 14, 2025, Defendant filed this motion to compel an appraisal. Dkt. No. 20. It also filed a memorandum of law and declaration of counsel in support of the motion. Dkt. Nos. 21–22. The declaration of counsel attaches the Canfield Declaration. Dkt. No. 22-2. Plaintiff filed a memorandum of law and a declaration in opposition to the motion on March 28, 2025. Dkt. Nos. 23–24. On April 11, 2025, Defendant filed a reply memorandum of law and declaration of counsel in further support of the motion.

## LEGAL STANDARD

"Under New York law, an appraisal may only decide a limited set of factual disputes, including the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy." *Coral Crystal, LLC v. Fed. Ins. Co.*, 2020 WL 5350306, at *4 (S.D.N.Y. Sept. 3, 2020) (quotations omitted). "The appraisal must also 'substantially' comply 'with the terms of the submission.'" *Id.* (quoting *Glicksman v. N. River Ins. Co.*, 448 N.Y.S.2d 77, 78 (4th Dep't 1982)). If an appraisal "remains within the limits prescribed by statute, and if the panel substantially complies with the terms of the submission, the Court may modify or vacate the award only on a showing of 'fraud, bias or bad faith.'" *Id.* (quoting *Zarour v. Pac. Indem. Co.*, 2017 WL 946332, at *1–2 (S.D.N.Y. Feb. 22, 2017)); *see also Zarour*, 2017 WL 946332, at *1–2 ("[A]n appraisal proceeding is entitled to every reasonable intendment and presumption of validity, provided the appraisers and umpire have substantially complied with the terms of the submission." (quoting *Glicksman*, 448 N.Y.S.2d at 78)); *Silverstein v. Xl Specialty Ins. Co.*, 2016 WL 3963129, at *5 (S.D.N.Y. July 21, 2016) ("An appraisal award should be upheld unless there is clear and convincing evidence that the appraiser rendered the award in bad faith without sufficient thoroughness or based on bias or fraud.")

"Pursuant to Section 7601 of the New York Civil Practice Law and Rules, 'appraisal agreements are to be enforced by the same methods as arbitration agreements.'" *Zync Music Grp.,*

*LLC v. Round Hill Music Royalty Fund II LP*, 2024 WL 4826801, at *2 (S.D.N.Y. Nov. 19, 2024) (quoting *Questrom v. Federated Dep't Stores, Inc.*, 41 F. Supp. 2d 294, 307 (S.D.N.Y. 1999), *aff'd*, 2 F. App'x 81 (2d Cir. 2001)). On a motion to compel arbitration, and therefore on a motion to compel appraisal, courts adopt "a standard similar to that applicable for a motion for summary judgment" which requires courts to "consider[ ] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted) (first quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), then quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)); *see also Soliman v. Subway Franchisee Advert. Fund Trust, Ltd.*, 999 F.3d 828, 833-34 (2d Cir. 2021) (same); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability.").

## DISCUSSION

Defendant argues that "[u]nder the plain terms of the Harleysville Policy, this dispute should be submitted to an umpire." Dkt. No. 21 at 7. It claims that the Canfield Declaration demonstrates that there is a disagreement between the appraisers that should be resolved by an umpire pursuant to the appraisal process set forth in the Policy. Dkt. No. 21 at 7–9. Plaintiff responds that the appraisal has concluded and the award delivered by the appraisers must now be enforced by the Court. Dkt. No. 24 at 6–8. Plaintiff has the better argument.

At the outset, Defendant attempts to call into question whether the Appraisal Award can be construed as representing an agreement between the appraisers at all. Because Canfield avers that he understood the "Mitigation/Drying" figure to be a mere line item, Dkt. No. 22-2 ¶¶ 8–9, 11–15, Defendant argues that "to the extent that Pilgrim's appraiser intended the

7

'Mitigation/Drying' figure to be awarded in addition to the 'Dwelling' repair figure, all that is shown is that there has not been an agreement between the appraisers notwithstanding that they both signed the Award," Dkt. No. 21 at 9. According to Defendant, "[i]t is not the Award that completes the required appraisal process, it is the *actual agreement* by the appraisers," and the Canfield Declaration demonstrates the appraisers may not have actually reached agreement. Dkt. No. 21 at 9. The implication of this argument, if accepted, is that the appraisal process never concluded such that the next step, as set forth in the Policy, is for the appraisers or Court to appoint an umpire. Defendant's argument is unavailing. The Policy states that "[a] decision agreed to by any two [appraisers] will be binding." Dkt. No. 22-1 at 104. The language of the Appraisal Award makes it clear that it is the decision agreed to by both Canfield and Utschig. Above the amounts listed for the dwelling loss, the Appraisal Award states "we have decided on an Appraisal Award as described below." Dkt. No. 23-1. Underneath the amounts, it states "we do hereby award the foregoing sums as our appraisal award." *Id.* And the Appraisal Award concludes "[t]his appraisal award shall be valid and binding upon all parties concerned if at least two of the three panel members concur in a decision, as evidenced by their signatures below," which is followed by the words "We agree to the above" and then Canfield and Utschig's signatures. *Id.* Nothing other than the Canfield Declaration, which the Court discusses in more detail below, indicates that the appraisers failed to reach an agreement as to valuation of the loss. Based on the record before it, the Court cannot conclude that the appraisers failed to reach agreement such that the appraisal remains open.

The more pertinent question concerns who should resolve the instant dispute as to the meaning of the Appraisal Award: an umpire or the Court. The Policy calls for an appraisal if the parties "disagree on the value of the property, the extent of the loss or damage or the amount of

8

the loss or damage." Dkt. No. 22-1 at 104. If the two appraisers selected directly by the parties "fail to agree" as to "the value of the property, the extent of the loss or damage and the amount of the loss or damage," they will "submit their differences to the umpire." *Id.* Defendant accordingly argues that because this case represents a "disagreement" as to "the amount of the loss or damage," the Policy demands that an umpire be selected to reach a resolution. Dkt. No. 21 at 7–9. But the present suit does not fall within the scope of the appraisal clause. The complaint here does not raise any issue regarding the value of the property or the amount of the loss. Plaintiff sues for breach of contract premised on Defendant's failure to pay the Appraisal Award and there is no question before the Court as to the actual cash value or actual replacement value of the underlying Loss. The Court will not be examining the excavated plumbing or comparing carpet invoices. The question before the Court is how the Appraisal Award should be interpreted. Put otherwise, the Court is not determining the amount of the loss or damage, but rather is determining what the appraisers announced the amount of the loss or damage to be.

The Court, rather than an umpire, is the correct adjudicator of that question. It is "a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss for which an insurer is liable." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *see also Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 607 (2d Cir. 2024) ("Interpretation of the text of an arbitration award is, like the interpretation of a contract, primarily a question of law." (quotation omitted)). "The appraisal process, unlike an arbitration, 'resolves only a valuation question leaving all other issues for resolution at a plenary trial.'" *Indian Chef, Inc. v. Fire & Cas. Ins. Co. of Ct.*, 2003 WL 329054, at *3 (S.D.N.Y. Feb. 13, 2003) (quoting *Penn Cent. Corp. v. Consol. Rail Corp.*, 436 N.E.2d 512, 516 (N.Y. 1982)). Therefore, "an appraisal will not be appropriate to

resolve the dispute" where the dispute concerns a matter other than "the computation of the amount of loss." *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, 2003 WL 1744288, at *4 (S.D.N.Y. Mar. 31, 2003); *see Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 154 (2d Cir. 2019) ("An appraisal is appropriate not to resolve legal questions, but rather to address 'factual disputes over the amount of loss for which an insurer is liable.'" (quoting *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 204 (2d Cir. 2012))). Even if referral to an umpire of the instant legal question was permitted, there is no reason to believe that an umpire would be any better situated than the Court to determine what the Appraisal Award says.

The Second Circuit has held, in the context of arbitration, that "[w]e must enforce the award as written and if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record." *White Oak*, 102 F.4th at 607 (quoting *Nano Gas Techs., Inc. v. Roe*, 31 F.4th 1028, 1031 (7th Cir. 2022)). Thus, a district court may may enforce even a "seemingly ambiguous award if the award's meaning is clearly resolved by the record." *Id.* "Though remand to an arbitration panel for clarification may be appropriate where an award is so ambiguous that a court is unable to discern how to enforce it, there is no support for remand in cases . . . where an award is clear." *Telenor Mobile Commc'ns AS v. Storm LLC*, 351 F. App'x 467, 469–70 (2d Cir. 2009) (summary order) (citing *Ams. Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985)); *accord Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024 WL 2963719, at *3 (S.D.N.Y. June 12, 2024) ("Under Second Circuit law, an award may be remanded only when it is ambiguous and when the Court cannot discern what it is being asked to enforce." (quotations omitted)). And remand should "be granted sparingly because of the likelihood that the arbitrator will believe that "a 'remand' is equivalent to a 'retrial.'" *In re Arb. between Gerlind Glob. Reinsurance Corp.*, 1999 WL 553767, at *2 (S.D.N.Y. July 29, 1999).

Courts in this Circuit have accordingly held that "an award must be confirmed where the true intent of the arbitrator is apparent or if the grounds for it can be inferred from the facts of the case." *Blue Tee Corp. v. Koehring Co.*, 808 F. Supp. 343, 347 (S.D.N.Y. 1992) (quotations and alterations omitted) (collecting cases), *aff'd*, 999 F.2d 633 (2d Cir. 1993); *see also e.g.*, *Garnes v. Pritchard Indus., Inc.*, 2024 WL 5202485, at *4 (S.D.N.Y. Dec. 20, 2024); *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 346 (S.D.N.Y. 2014). Language in an appraisal award is ambiguous when it "is susceptible to multiple meanings." *Ferrand v. Mystique Brands LLC*, 2021 WL 119572, at *10 (S.D.N.Y. Jan. 13, 2021) (citing *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 549 (2d Cir. 2018)). "In determining whether an award is ambiguous, courts are not confined to the award's text." *White Oak*, 102 F.4th at 607 (2d Cir. 2024). In addition to the face of the award, courts may look to "extraneous but objectively ascertainable fact[s]." *Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 371 (2d Cir. 1999). Furthermore, when reading the text of a purportedly ambiguous award, courts apply standard canons of construction such as avoiding absurdity or superfluity to determine whether it is actually susceptible to multiple meanings. *See, e.g.*, *White Oak*, 102 F.4th at 608–09.

The Canfield Declaration does not provide admissible guidance as to the correct interpretation of the Appraisal Award or even as to whether the Award is ambiguous to the point of warranting remand. Reliance upon the Canfield Declaration is particularly inappropriate given the Second Circuit's strong protections against questioning arbitrators as to the foundation of their decisions. There is a "well-established rule that arbitrators may not be deposed absent 'clear evidence of impropriety.'" *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 66 (2d Cir. 2003) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir. 1978)), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *see*

11

*also NGC Network Asia, LLC v. PAC Pac. Grp. Int'l, Inc.*, 511 F. App'x 86, 89 (2d Cir. 2013) (summary order); *Molecular Dynamics Ltd. v. Spectrum Dynamics Med. Ltd.*, 2022 WL 17418695, at *1 (S.D.N.Y. Nov. 28, 2022); *Glob. Gaming Phillipines, LLC v. Razon*, 2021 WL 4219690, at *2 (S.D.N.Y. Sept. 16, 2021). Thus "[w]hile arbitrators may be deposed regarding claims of bias or prejudice, cases are legion in which courts have refused to permit parties to depose arbitrators—or other judicial or quasi-judicial decision-makers—regarding the thought processes underlying their decisions." *Hoeft*, 343 F.3d at 67–68 (holding that district court should not have permitted deposition of arbitrator or relied upon the arbitrator's testimony) (collecting cases). The fact that Canfield appears to have willingly cooperated with Defendant's post-award inquiry changes nothing. The rule exists to protect the integrity and independence of the arbitration process and not to protect individual arbitrators.[2] The appraisers reiterated this immunity directly in the Appraisal Award, stating: "The award of the appraisal panel is confidential and exempt from deposition or suit in case the award is challenged or a bad faith claim is filed." Dkt. No. 23-1.

This non-discovery principle is consistent with New York's approach to appraisal finality. "Permitting depositions of arbitrators regarding their mental processes would make arbitration only the starting point in the dispute resolution process and deprive arbitration awards of the last word on their authors' intentions." *Hoeft*, 343 F.3d at 68 (citing *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)). When an appraisal is concluded, the appraisers and umpires—just like arbitrators—speak through the words of their award. It would be inconsistent with that principles if, after an award is rendered, it could be challenged by a party investigating the process for reasons other than fraud, bias or bad faith. *See Forbes v. Cendant*

---

[2] Were the rule otherwise, Plaintiff would be entitled to test Canfield's assertions through a deposition and both parties would be entitled to take the deposition of Utschig.

*Corp.*, 205 F.3d 1322 (2d Cir. 2000) (holding that a party cannot promise to abide by an appraisal and then relitigate the issue elsewhere "simply because he disagrees with the result"). To permit a party to raise other attacks on an appraisal award "would eviscerate Section 7601." *Id.* Indeed, in recognition of the finality appraisal awards represent, the Second Circuit has held that an appraisal award may have *res judicata* effect even if not reduced to a formal final judgment by a court. *See Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir. 1997); *Giannone v. York Tape & Label, Inc.*, 2007 WL 1521500, at *5 n.5 (E.D.N.Y. May 23, 2007) (Bianco, J.), *aff'd*, 548 F.3d 191 (2d Cir. 2008).

Even if Canfield could be questioned about his understanding of the Appraisal Award, the record indicates he spoke without any authority to do so. The Second Circuit has held that "[t]he *functus officio* doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine those issues." *Lincoln Nat'l*, 909 F.3d at 548 (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010)); *see also Ottley*, 819 F.2d at 376 ("Since the final determination by the arbitrators of matters in dispute fulfils the purpose of the submission, the authority of arbitrators terminates with the making of a valid, final award."); *accord Major League Baseball Players Ass'n v. Arroyo*, 2024 WL 3539575, at *3 (S.D.N.Y. July 24, 2024). After issuing the Appraisal Award, Canfield was divested of the authority to amend it or to opine upon its interpretation. *See Ottley*, 819 F.2d at 376 (after arbitrator issued an award, the arbitrator did not retain authority to rule on issues of compliance).

A relevant "exception to the *functus officio* doctrine applies and remand is permitted . . . when the award is susceptible to more than one interpretation." *Eletson Holdings*, 2024 WL

13

2963719, at *3 (quotation omitted).  Thus, "[a]n arbitrator does not become *functus officio* when it issues a clarification of an ambiguous final award as long as three conditions are satisfied: (1) the final award is ambiguous; (2) the clarification merely clarifies the award rather than substantively modifying it; and (3) the clarification comports with the parties' intent as set forth in the agreement that gave rise to arbitration."  *Lincoln Nat'l*, 909 F.3d at 549.[3]  As is particularly relevant here, "[t]he traditional rationale underlying [the *functus officio* doctrine] is that it is necessary to prevent re-examination of an issue by a nonjudicial officer potentially subject to outside communication and unilateral influence."  *Lincoln Nat'l*, 909 F.3d at 548 (quoting *LLT Int'l Inc. v. MCI Telecomms. Corp.*, 69 F.Supp.2d 510, 515 (S.D.N.Y. 1999)); *accord A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58, 61 (S.D.N.Y.1981), *aff'd*, 678 F.2d 391 (2d Cir. 1982).[4]  The Canfield Declaration thus cannot itself be used to demonstrate the Appraisal Award's ambiguity so as to create an exception to the *functus officio* doctrine.  Such application would be wholly circular and suspect for the very reasons that warrant application of the doctrine.

The Second Circuit's approach in *Hyle* to an appeal concerning "the circumstances under which an arbitrator or a court may take steps to have an arbitration award corrected," is instructive.

---

[3] This standard underscores the point that remand for the appointment of an umpire would not aid resolution, even it if was permitted.  Any remand would have to be for clarification of the existing award, not modification by a new appraiser introducing their own understanding of the actual cash value of the underlying loss.

[4] Both the rule and justification bear significant resemblance to New York's rule against using extrinsic evidence to interpret an unambiguous contract.  *See W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. . . .  That rule imparts stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses infirmity of memory and the fear that the jury will improperly evaluate the extrinsic evidence."); *see also Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) ("The purpose and essence of the rule [against parol evidence] is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract.").

198 F.3d at 369. In that case, Doctor's Associates, Inc. filed an arbitration demand against several partners based on breach of a franchise agreement. *Id.* The arbitration demand sought termination of the franchise agreement with respect to all the partners but sought damages and injunctive relief with respect to only one, Hyle. *Id.* The arbitrator entered an award in favor of Doctor's Associates, Inc. terminating the franchise agreement but awarding damages and injunctive relief only with respect to a different partner, Gruelich. *Id.* Upon correspondence with the parties, the arbitrator confirmed that a mistake had been made and issued a "corrected arbitration award" that replaced Gruelich's name with Hyle's throughout. *Id.* at 369–70. Hyle petitioned to confirm the original award, and the district court denied the motion to confirm, characterized the award subjecting Gruelich rather than Hyle to damages and an injunction to be "clearly a simple mistake," and remanded the matter to the arbitrator "for clarification of the award in accordance with this ruling." *Id.* at 370. The Second Circuit wrote that:

> The issue on this appeal arises in an area of arbitration law where four related rules of law converge. First, absent an agreement by the parties to the contrary, "once arbitrators have finally decided the submitted issues, they are, in common-law parlance, 'functus officio,' meaning that their authority over those questions is ended." *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991). Second, even after rendering an award, an arbitrator retains limited authority to "correct a mistake which is apparent on the face of [the] award." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (internal quotation omitted). "The exception for mistakes apparent on the face of the award is applied to clerical mistakes or obvious errors in arithmetic computation." *Id.* at 332 (citation omitted); *see Local P–9, United Food & Com. Workers v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir. 1985). Third, a district court also has limited authority to correct certain mistakes—"an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Fourth, a district court can remand an award to the arbitrator for clarification where an award is ambiguous. *See Colonial Penn*, 943 F.2d at 333–34; *Seagull Compania*, 774 F.2d at 67.

*Id.* (internal citations altered). Based on these principles, the Second Circuit found that "the wording of the award, read in conjunction with the undisputed limitation announced by [Doctor's

15

Associates, Inc.] as to the respondent against whom it was seeking damages and an injunction, creates an ambiguity as to whether the arbitrator intended to award damages and an injunction against Gruelich, Hyle, or possibly even all four respondents," such that an open-ended remand to the arbitrator was justified.  *Id.* at 371–72.  The Second Circuit notably cast aspersions on the district court's use of the arbitrator's post hoc statement of mistake as a basis for remand.  The Circuit stated that "[t]hough the arbitrator has now indicated in his 'corrected' award what he intended to order, he acted at a time when he might have lacked authority, and the District Court might have lacked authority to direct compliance with the arbitrator's expressed intention."  *Id.* at 371; *see also White Oak*, 102 F.4th at 607 (discussing *Hyle* and noting that the ambiguity arose out of the arbitration record, without mentioning the arbitrator's post-arbitration conduct).[5]  To determine whether the Appraisal Award is ambiguous, the Court looks not to the disempowered appraiser, but to the record and the language of the award itself.

Defendant ultimately fails to show that the Policy calls for an appraisal at this juncture.  An appraisal has already been conducted.  Because the instant case raises a question of law as to the proper reading of the Appraisal Award, the Court is the correct adjudicator.  The further question of how to interpret the Appraisal Award—including whether the award is ambiguous and whether any ambiguities can be resolved through examination of the language of the award and of the record before the appraisers—remains for future proceedings.

---

[5] The Second Circuit took a somewhat more deferential approach in *Lincoln Nat'l*, 909 F.3d 544.  In that case, the Circuit held that the arbitrators' issuance of a clarification to its final award was an exception to the *functus officio* because the final award was indeed ambiguous.  *Id.* at 549.  However, instead of solely confining itself to the award and record, the Circuit stated that "[w]hile perhaps not dispositive, the arbitrators' finding of ambiguity [as to their own award] is due deference, as is the norm with arbitral awards.  *Id.*  No such "norm" exists with respect to awards issued by appraisers who are authorized to resolve only valuation issues and do not command any deference to their positions on questions of law.  *See Indian Chef*, 2003 WL 329054, at *3.

## CONCLUSION

Defendant's motion to compel appraisal is DENIED. Defendant's motion to stay the litigation pending appraisal is accordingly also DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 20.

SO ORDERED.

Dated: April 29, 2025
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge